IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

KATHERINE ELLIOTT                                                                                    PLAINTIFFS

V.                                        Case No. 12-CV-1033

AMERICAN FUEL CELL AND
COATED FABRICS COMPANY                                                                      DEFENDANT

**MEMORANDUM OPINION**

Before the Court is a Motion for Summary Judgment filed by Defendant American Fuel Cell and Coated Fabrics Company. (ECF No. 19). Plaintiff Katherine Elliott has responded. (ECF No. 23). Defendant has filed a reply. (ECF. No. 27). The matter is ripe for the Court's consideration. For the reasons explained below, Defendant's motion is granted.

**I.  BACKGROUND**

This case involves an employment dispute between Plaintiff and Defendant American Fuel Cell and Coated Fabrics Company ("Amfuel"). Amfuel manufactures fuel cells,[1] and one of its customers is the United States Government. Amfuel hired Plaintiff in 2008 to be its government contract sales representative. One of Plaintiff's job duties was to respond to solicitations from federal government contracting officers. Amfuel's practice was to respond to the solicitations with information relating to the companies' qualifications, expected dates of delivery, and prices.[2]

The Defense Contract Management Agency ("DCMA") requires companies providing products to the government to maintain higher-quality standards. One of these higher-quality

---

[1] Fuel cells are rubberized containers that hold fuel for aircraft.

[2] Amfuel calls its responses "quotes" and refers to the response process as "quoting."

standards is referred to as AS9100. Amfuel represents in its contracts that, upon delivery of the product, Amfuel will meet AS9100 requirements.

On December 10, 2010, Plaintiff sent an email to Amfuel employees and government contractors. In the email, Plaintiff refers to Amfuel's parent company as "the French." A division manager from Amfuel's parent company saw the email and was offended because he is from France. The division manager considered the email to be unprofessional and ordered Amfuel's CEO, Michael Viscosi, to manage future communications to its customers. Bill Mow, Plaintiff's immediate supervisor, sent Plaintiff two emails reminding Plaintiff that he must approve certain emails written by Plaintiff before she sent them. Plaintiff agreed that her email was unprofessional and acknowledged that she would not send out certain emails until Mow approved them.

On or around May 23, 2011,[3] Amfuel received notice that Det Norski Veritas[4] was suspending Amfuel's AS9100 certification. Immediately after Amfuel's AS9100 certification was suspended, Mow ordered Plaintiff to make sure that her contracting government officers were aware of the suspension. Plaintiff notified her contracting officers of Amfuel's AS9100 certification suspension by forwarding them the email notification of the suspension that she had received from Mow.

A quote for the first government solicitation received after the notice of suspension was due on or around June 16, 2011. On June 10, 2011, Plaintiff and Mow began discussing whether Amfuel could respond to solicitations received during the time that its AS9100 certification was suspended.

---

[3] Amfuel states in its Statement of Undisputed Material Facts that the date that Amfuel was notified that its AS9100 certification was suspended was May 23, 2012. (ECF No. 20, ¶ 41). It is clear, however, from the context that the year should be 2011.

[4] Det Norski Veritas is the private company hired by Amfuel to certify that it is in compliance with AS/ISO standards.

During this conversation, Mow told Plaintiff that because he anticipated the suspension would only last about two weeks, Amfuel would continue responding to government solicitations. Plaintiff thought that this approach would be in violation of the law because Amfuel represented in its quotes that it would meet AS9100 standards. Plaintiff consulted with a DCMA government contracting agent about whether he thought Amfuel could quote during the AS9100 suspension. DCMA's government contracting agent advised Plaintiff that it would not be a violation of the law as long as Amfuel noted the suspension on each individual response.

Plaintiff believed that Amfuel could not receive a contract without notifying the government about the AS9100 certification suspension, and then the government could decide whether it wanted to give the contract to Amfuel after considering the potential effect on delivery dates. Plaintiff thought that Amfuel should note the suspension on each quote even though Amfuel had already sent out one notification of the suspension to the government via email. Plaintiff sent Mow an email, copying government contracting officers and Amfuel's human resources director. The email reads as follows:

> Bill [Mow],
>
> This is what I will do if you are going to have a problem with me not quoting then I will quote per your instructions. However, I will write on the quote that we are suspended AS9100 and ISO9001 because AMFUEL is not compliant to the solicitation to the contract. If anyone would like to address this please do. I have spoken verbally about this with you and I would like written email to confirm my conversations with you. Thank you all for your time and consideration.
>
> Kat [Plaintiff]

Mow sent Plaintiff an email approving Plaintiff's suggestion of noting the suspension on each quote but informed Plaintiff that he would like the notification to be written in a more positive and informative manner. Plaintiff does not deny that Mow sent her this email, but she does not recall

seeing it.  In the email Mow instructed Plaintiff to write "AS suspended and is expected to be reinstate[sic] by June 27[.]"

When Amfuels's human resources director, Tom Moore, received Plaintiff's email, he perceived it to be unprofessional and inappropriate communication with persons outside the company.  Moore did not approve of Plaintiff involving persons outside of Amfuel in an internal email communication with Mow.  Plaintiff was suspended with pay on June 15, 2011.

Moore informed Plaintiff that he, Mow, and Viscosi (Amfuel's CEO) wanted to meet with her on June 20, 2011, regarding the email.  Plaintiff refused to attend the meeting if Mow would be present, and she insisted that she bring her attorney to the meeting.  Amfuel's policy was that it did not allow attorneys in internal meetings.  Plaintiff, however, refused to meet with any members of Amfuel without an attorney.  Plaintiff was terminated on June 24, 2011.  In the termination letter, Viscosi explained his belief that companies cannot function with employees bringing attorneys to meetings between internal employees and management.  Viscosi further stated that, Plaintiff's insistence on having her attorney present at the meeting, demonstrates that the relationship between Plaintiff, Mow, and Amfuel had deteriorated "to the point that an on-going working relationship is simply not feasible."  Plaintiff, however, believes that she was terminated for refusing to quote during the AS9100 suspension.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Under this standard, the inquiry is not whether the evidence favors one side or the other, but

"whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). When considering a summary judgment motion, the Court "must view the evidence 'in the light most favorable to the nonmoving party.'" *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 445 (8th Cir. 2008) (quoting *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997)). To defeat a motion for summary judgment, however, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (8th Cir. 1997). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010).

### III. DISCUSSION

Plaintiff alleges five claims against Amfuel. Plaintiff brings two of the claims pursuant to federal whistleblower statutes. The remaining three claims are state law claims: wrongful termination, defamation, and outrage. Amfuel asserts that it is entitled to summary judgment on all claims.

#### A. 5 U.S.C. § 2302

Amfuel argues that it is entitled to summary judgment on Plaintiff's claim pursuant to the Whistleblower Protection Act of 1989, 5 U.S.C. § 2302, because the statute does not apply to private sector employees. The Whistleblower Protection Act provides federal employees with protection

against agency reprisals for disclosing gross mismanagement. 5 U.S.C. § 2302(b)(8). The Whistleblower Protection Act, by its terms, applies only to federal employees. *See* 5 U.S.C. § 2302(a)(2)(A)(xii) (stating that the statute applies to an employee or applicant for employment in a Government corporation). Plaintiff is a private sector employee. Thus, the Court has no jurisdiction over this claim. Even if Plaintiff was a government employee, 5 U.S.C. § 2302 does not create a private right of action. *Hastings v. FAA*, 187 F.3d 938, 940 (1999). Plaintiff's claim under 5 U.S.C. § 2302 is dismissed.

### B. 10 U.S.C. § 2409

Amfuel claims that it is entitled to summary judgment on Plaintiff's claim under the whistleblower statute for employees of defense contractors, 10 U.S.C. § 2409, because the statute does not afford a private cause of action. The Court agrees. The purpose of § 2409 "is to subject allegations of retaliatory employment actions against whistleblowers to administrative review. This purpose neither calls for, nor supports, the implication of a private right." *Pacheo v. Raytheon Co.*, 777 F. Supp. 1089, 1092 (D. R.I. 1991) (citing *Mayo v. Questech, Inc.*, 727 F. Spp. 1007, 1014 (E.D. Va. 1989)); *see Rogers v. U.S. Army*, No. H-06-1389, 2007 WL 1217964, at *6 (S.D. Tex 2007). Plaintiff does not cite to any cases that hold that this statute creates a private cause of action. Plaintiff, in fact, does not even make this argument. Instead, Plaintiff states that, if Defendant "wants to raise" the issue of a private right of action, Plaintiff "will file a formal complaint with the government office responsible." Because there is no private cause of action under 10 U.S.C. § 2409, Plaintiff's claim under this statute is dismissed.

### C. Wrongful Termination

Plaintiff asserts that she was terminated from Amfuel because she refused to follow allegedly unlawful instructions from Mow, her immediate supervisor. When an employee's contract of employment is for an indefinite term, either party may terminate the relationship without cause or at will. *Tripcony v. Ark. School for Deaf*, 2012 Ark. 188, at 9, ___ S.W.3d ___ (2012) (citing *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 245, 743 S.W.2d 380, 383 (1988)). "[A]n at-will employee may be discharged for good cause, no cause, or even a morally wrong cause." *Smith v. American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683, 684 (1991). An employee, however, has a cause of action for wrongful discharge if she is fired in violation of a well-established public policy of the state. *Id*. Undoubtedly, an employer's insistence that an employee violate government regulations violates public policy. *See Webb v. HCA Health Services of Midwest, Inc.*, 300 Ark. 613, 619, 780 S.W.2d 571, 574 (1989) (stating that an employer's request to falsify a business record used in achieving the purposes of a program required by law of medical providers violates public policy). The burden of establishing a prima facie case of wrongful discharge is upon the employee, but once the employee has met its burden, the burden shifts to the employer to prove that there was a legitimate, non-retaliatory reason for the discharge. *General Electric Co. v. Gilbert*, 76 Ark. App. 375, 381, 65 S.W.3d 892, 897 (2002).

Here, Plaintiff claims that Mow "wanted her to violate contracting rules and regulations promulgated by the federal government." Specifically, Plaintiff claims that Mow wanted her to not notify the government or conceal the fact that Amfuel's AS9100 certificate had been suspended. Plaintiff believes that she was terminated for refusing to quote during the suspension. Plaintiff testified that it was her understanding that Amfuel would be violating the law if it sent quotes to the

government without disclosing that its AS9100 certification was suspended. Plaintiff, however, also testified that Mow directed her to make sure that her government contacts were aware of Amfuel's AS9100 certification suspension. Plaintiff eventually agreed to resume the quoting process but told Mow that she would note the suspension on each individual quote. There is no evidence that Mow disagreed with Plaintiff's suggestion to note the suspension on each quote. In fact, Mow sent Plaintiff an email approving of her suggestion.[5] Plaintiff cannot show that Mow intended for Plaintiff to violate any government regulation and there is no evidence that Amfuel has violated any law or regulation. Accordingly, Plaintiff cannot make out a prima facie case of wrongful termination and this claim is dismissed.

Even assuming that Plaintiff could meet her burden of producing evidence to support a prima facie case of wrongful termination, her claim fails because she does not dispute the legitimate, non-retaliatory reason for her termination. Viscosi, Amfuel's CEO, testified that he made the decision to terminate Plaintiff because she refused to meet with anyone at Amfuel without her attorney. Viscosi explained in his deposition and in the termination letter that Plaintiff's refusal to meet without her attorney demonstrated that Plaintiff could not have an ongoing working relationship with Amfuel. Plaintiff offers no evidence that the legitimate, non-retaliatory reasons stated in the termination letter were pretextual. Because Amfuel has provided undisputed evidence of a legitimate, non-retaliatory reason for Plaintiff's termination, Plaintiff's wrongful termination claim is dismissed.

---

[5] Plaintiff testified that she never received this email. This, however, does not change the fact that there is no evidence that Mow disapproved of Plaintiff's suggestion to note the AS9100 certification suspension on each quote.

**D. Defamation**

Plaintiff admits that she does not have enough evidence to pursue her defamation claim and thus concedes that Amfuel is entitled to summary judgment on this claim. Accordingly, Plaintiff's defamation claim is dismissed.

**E. Outrage**

Plaintiff brings a state law claim of outrage based on her termination. To state a cause of action for the tort of outrage, the Plaintiff must establish: 1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the Plaintiff's distress; and (4) the emotional distress sustained by the Plaintiff was so severe that no reasonable person could be expected to endure it. *Cincinnati Life Ins. Co. v. Mickles*, 85 Ark. App. 188, 148 S.W.3d, 768, 774 (2004). The Arkansas Supreme Court has taken a strict view in recognizing such a claim in an employment setting. *Smith*, 304 Ark. at 601, 804 S.W.2d at 686. The Court has further held that "[b]ecause of the employer's right to discharge an at-will employee, a claim of outrage by an at-will employee cannot be predicated upon the fact of the discharge alone." *Harris v. Ark. Book Co.*, 287 Ark. 353, 356, 700 S.W.2d 41, 43 (1985). Here, Plaintiff alleges that Amfuel's conduct in suspending and finally discharging her was extreme and outrageous in that it made Plaintiff nervous and afraid. Plaintiff further alleges that Amfuel berated her for her integrity. The Court finds that these allegations do not meet the strict standards required to sustain a cause of action for outrage. Other than her own affidavit stating that Mow screamed at her, Plaintiff has offered no proof to support her allegations. Accordingly, Plaintiff's outrage claim is dismissed.

## IV.  CONCLUSION

For the reasons stated above, the Court finds that Amfuel's Motion for Summary Judgment (ECF No. 19) should be and hereby is **GRANTED**. Plaintiffs' complaint is **DISMISSED.**

IT IS SO ORDERED, this 5th day of August, 2013.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge